2008 WY 149

**James Edward SCHAFER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0175.

Supreme Court of Wyoming.

Dec. 17, 2008.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; David Westling, Senior Assistant Appellate Counsel; and Kirk A. Morgan, Assistant Appellate Counsel. Argument by Messrs. Morgan and Westling.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] A Natrona County jury found James Edward Schafer (hereinafter "Schafer") guilty on seven of eight counts, which included various assault charges and multiple drug charges. We reverse Schafer's conviction for attempted aggravated assault and battery but affirm his other convictions.

## ISSUES

[¶ 2] Schafer presents three issues for review:

I. The trial court erred in impermissibly applying Wyoming's General Attempt Statute to W.S. § 6–2–502(a)(iii) which resulted in a misapplication of W.S. § 6–2–502(a)(iii).

II. There was insufficient evidence to support [Schafer]'s conviction for attempted aggravated assault and battery of Deputy Cline.

III. The trial court abused its discretion by denying a motion for new trial based on numerous instances of prosecutorial misconduct.

The State rephrases the issues as follows:

I. The trial court did not err in applying Wyoming's General Attempt Statute, Wyo. Stat. Ann. § 6–1–301, to aggravated assault and battery, Wyo. Stat. Ann. § 6–2–502(a)(iii).

II. Sufficient evidence was presented at trial to support [Schafer]'s conviction for attempted aggravated assault and battery.

III. The trial court did not abuse its discretion by denying [Schafer]'s motion for a new trial.

## FACTS

[¶ 3] On January 20, 2006, Deputy Tim Rostad of the Natrona County Sheriff's Department was patrolling a highway near Mills, Wyoming, when he noticed a red pickup with a burnt-out headlight. Based upon Deputy Rostad's observation of the missing headlight, he activated his overhead lights in an attempt to pull over the pickup.

[¶ 4] Rather than stopping, Schafer, the driver of the red pickup, accelerated and continued into Mills despite being followed by multiple sheriff's vehicles with their sirens and lights activated. After one of the sheriff's deputies attempted to block Schafer's vehicle with his own, Schafer evaded the deputy and drove his vehicle into a field, where he vacated the truck and began to run. After seeing that Schafer had a handgun, Deputy Rinker ordered Schafer to stop and show his hands. Deputy Cline also saw Schafer's gun, and accordingly ordered him to "stop and drop the weapon." Deputy Cline caught up to Schafer and activated his Taser, whereupon Schafer immediately fell to the ground. Schafer was immediately placed in custody. A few inches away, the deputies found the handgun.

[¶ 5] Upon the subsequent execution of a search warrant on Schafer's truck by Special Agent Aaron Shatto of the Wyoming Division of Criminal Investigation, two boxes of liquid and crystal methamphetamine were found, as well as a scale, baggies, and other drug-related items.

[¶ 6] After a jury trial, Schafer was convicted of: Count I, attempted aggravated assault and battery; Count Two, reckless endangering; Count Four, fleeing or attempting to elude a police officer; Count Five, knowingly or intentionally possessing a controlled substance, methamphetamine in a powder or crystalline form; Count Six, possession with intent to deliver a controlled substance, methamphetamine; Count Seven, possession of a deadly weapon with unlawful intent; and Count Eight, knowingly or intentionally possessing a controlled substance, methamphetamine.

[¶ 7] At sentencing, the trial court merged Counts Two and Seven into Count One, and Counts Five and Eight into Count Six. On Count Four, Schafer was sentenced to 90 days in the Natrona County Detention Center, with credit for 90 days served. On Count One, Schafer was sentenced to the Wyoming State Penitentiary (WSP) for seven to nine years, with credit for time served of 379 days. On Count Six, Schafer was sentenced to the WSP for five to eight years. All sentences are to be served consecutively.

## DISCUSSION

### Arguments I and II

[¶ 8] In his first argument, Schafer claims that if this Court allows a conviction for "an attempt to threaten with a drawn deadly weapon" to stand under Wyoming's general attempt statute, it will circumvent this Court's ruling in *Johnston v. State*, 747 P.2d 1132 (Wyo.1987), which held that the mere possession of a drawn weapon does not constitute a threat. Schafer also contends that by allowing his conviction to stand, this Court will expand the scope of Wyo. Stat. Ann. § 6-2-502(a)(iii) (LexisNexis 2007) beyond the legislature's intentions. Schafer argues that "a perpetrator either threatens to use a drawn weapon, or does not." He con-

tends that it is not possible to attempt to make an actual threat of physical injury while employing a deadly weapon—rather, until the threat is actually made, there is no crime.

[¶ 9] The State admits that because the crime of assault is traditionally described as an attempt itself, many courts have had difficulty with the concept of an attempted assault, in that such may be characterized as an attempt at attempted battery. Yet, the State insists that there can be such a thing as "attempted attempt."

[¶ 10] As we stated in *Howard v. State*, 2002 WY 40, ¶ 29, 42 P.3d 483, 492 (Wyo.2002):

When we analyze statutes, we endeavor to interpret them in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia* so that no part will be inoperative or superfluous. [Internal citations omitted.]

[¶ 11] In considering the first question presented on appeal, we first look to the statutory language. Schafer was convicted under Wyoming's general attempt statute, Wyo. Stat. Ann. § 6-1-301(a)(i) (LexisNexis 2007) as applied through Wyoming's aggravated assault and battery statute, Wyo. Stat. Ann. § 6-2-502 (LexisNexis 2007). The general attempt statute provides in part:

(a) A person is guilty of an attempt to commit a crime if:

. . . .

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

Wyo. Stat. Ann. § 6-1-301(a)(i) (LexisNexis 2007). The underlying crime Schafer was convicted of was "threatening to use a weapon" in violation of Wyo. Stat. Ann. § 6-2-

502(a)(iii) (LexisNexis 2007). In part, this statute provides that a person is guilty of aggravated assault and battery if he "[t]hreatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another." Essentially, Schafer was convicted of attempting to threaten to use a drawn deadly weapon on another.

[¶ 12] The ultimate question in this appeal is whether the Wyoming Legislature intended attempted aggravated assault to be a criminal offense. The answer to the question, in this Court's estimation, is that the Legislature did not so intend. The general attempt statute, Wyo. Stat. Ann. § 6-1-301 (LexisNexis 2007), is applicable to all crimes unless the specific criminal statute, in this case the aggravated assault and battery statute, also relates to attempts. This Court has generally described the reach of the general attempt statute as follows:

[T]he general attempt statute is operative when applied to statutes where the legislature has not already spoken; and where the legislature has enacted a special statute making the attempt a crime, the special statute will prevail. This construction gives effect to both statutes and a policy that ambiguity concerning the application of criminal statutes should be resolved in favor of lenity. It is in conformance with " * * * the principle that gives precedence to the terms of the more specific statute where a general statute and a specific statute speak to the same concern, even if the general provision was enacted later. [Citations] This guide to statutory construction has special cogency where a court is called upon to determine the extent of the punishment to which a criminal defendant is subject for his transgressions. In this context, the principle is a corollary of the rule of lenity, an outgrowth of our reluctance to increase or multiply punishments absent a clear and definite legislative directive." *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978).

*Capwell v. State*, 686 P.2d 1148, 1152-53. In this appeal, therefore, it is mandatory that this Court analyze the language of the aggravated assault and battery statute in order to determine if it covers the issue of attempt, thus precluding the overlay of the general attempt statute.

[¶ 13] In full, § 6-2-502 reads:

**§ 6-2-502. Aggravated assault and battery; penalty.**

(a) A person is guilty of aggravated assault and battery if he:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or

(iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.

(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

To loosely summarize the statute, a person is guilty of aggravated assault and battery if he: 1) seriously injures someone or injures a pregnant woman; 2) attempts to injure someone with a deadly weapon; or 3) threatens to injure someone with a drawn deadly weapon.

[¶ 14] As can be seen, the statute specifically deals with the concept of attempt. The Wyoming Legislature has criminalized an attempt to injure in subsection (a)(ii). This subsection does not speak of an attempt to threaten. Neither does the subsection treating a threat to injure contain any reference to an attempt to threaten. "There is a presumption in law that an omission is intentional where particular words or terms appear in one provision, but not in another related provision." *Longfellow v. State*, 803 P.2d 1383, 1387 (Wyo.1991).

[¶ 15] The intent of the Wyoming Legislature is manifest in its inclusion of "attempt"

in subsection (a)(ii) and the omission of "attempt" from subsection (a)(iii). Given this specific language, we conclude the Wyoming Legislature did not intend for the general attempt statute to be applicable to the specific aggravated assault and battery statute. This is the only construction that can give effect to all the provisions of the statute, and ensure the manifest legislative intent is carried out. By overlaying the general attempt statute on the aggravated assault and battery statute, this Court would judicially establish a crime that the Wyoming Legislature never intended. See generally *In re James M.*, 9 Cal.3d 517, 108 Cal.Rptr. 89, 510 P.2d 33 (1973); Steven James Malamuth, Comment, A *Final Assault on Attempted Assaults*, 14 Santa Clara Lawyer 96 (1973).

[¶ 16] At the very least, the language with regard to the concept of attempt in the aggravated assault and battery statute is ambiguous. This ambiguity calls into play the rule of lenity. Under the rule of lenity, criminal defendants receive the benefit of any ambiguity. Thus, the rule of lenity mandates the same result.

[¶ 17] There is yet another reason that supports that the Wyoming Legislature did not intend the general attempt statute to apply to the aggravated assault and battery statute. The Wyoming Legislature has established a number of crimes that punish behavior which would fall within the definition of "attempt to threaten." For instance, Wyo. Stat. Ann. § 6–8–103 (LexisNexis 2007) criminalizes the possession of a deadly weapon with the intent to threaten the physical well-being of another.[1] Wyo. Stat. Ann. § 6–2–504 (LexisNexis 2007) criminalizes reckless actions, including the pointing of a firearm, that endanger others.[2]

[¶ 18] We must read statutes in pari materia. In doing so, we conclude the Legislature never intended for the general attempt statute to be applied to the aggravated assault and battery statute. The crime as charged in this case simply does not exist except by judicial and prosecutorial creation.

In light of our determination that the offense with which Schafer was charged is not supported by Wyoming statutes, the judgment of the trial court must be reversed. Furthermore, our resolution of this issue resolves Schafer's second issue as well.

### Argument III

[¶ 20] Schafer's final argument is that prosecutorial misconduct occurred at trial, and because of the misconduct, the trial court should have granted Schafer's motion for a new trial. We disagree.

[¶ 21] Three claims of prosecutorial misconduct are alleged on appeal, the cumulative effect of which allegedly denied Schafer a fair trial. We typically review allegations of prosecutorial misconduct by reference to the entire record to determine whether or not a defendant's case has been so prejudiced as to deny him a fair trial. *Szymanski v. State*, 2007 WY 139, ¶ 27, 166 P.3d 879, 886 (Wyo.2007). However, similar to *Yellowbear v. State*, 2008 WY 4, ¶ 64, 174 P.3d 1270, 1295 (Wyo.2008), our standard of review is a bit different in this instance because Schafer challenges the prosecutor's conduct through the lower court's denial of his motion for a new trial based upon the alleged misconduct. Thus, we are technically reviewing the denial of the motion for a new trial, as was the case in *Yellowbear*. Consequently, our standard of review when reviewing the denial of a motion for a new trial is for an abuse of discretion. *Barker v. State*,

1. Section 6–8–103 states:
   A person who knowingly possesses, manufactures, transports, repairs or sells a deadly weapon with intent to unlawfully threaten the life or physical well-being of another or to commit assault or inflict bodily injury on another is guilty of a felony punishable by imprisonment for not more than five (5) years, a fine of not more than one thousand dollars ($1,000.00), or both.

2. Section 6–2–504 provides in relevant part:

   (a) A person is guilty of reckless endangering if he recklessly engages in conduct which places another person in danger of death or serious bodily injury.
   (b) Any person who knowingly points a firearm at or in the direction of another ... is guilty of reckless endangering unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another.

2006 WY 104, ¶ 12, 141 P.3d 106, 112 (Wyo. 2006). An abuse of discretion occurs wherein the district court could not have reasonably concluded as it did. *Yellowbear*, ¶ 66, 174 P.3d at 1295.

[¶ 22] Schafer first takes issue with the denial of his motion for mistrial based upon the potential for confusing Schafer with another man named Zachariah Cohen. Schafer was mentioned along with Cohen in a newspaper article which referred to a "dangerous gang of criminals" and related that Cohen recently had been convicted of numerous offenses similar to those with which Schafer was charged at trial. Furthermore, at trial, a computer desktop file folder that was projected on a large screen at trial was marked "Cohen."

[¶ 23] The trial court addressed these issues at a motions hearing and stated:

I would again note that the concern about the name "Cohen" being on the icon or the file designation from the computer projection, once again, I don't see by just the name Cohen being there that there was any connection whatsoever to anything in this case. I don't recall any trial testimony referencing Zach Cohen or Armor Jolley, and the small icon that may or may not have been seen by the jury needed to be tied in some way to some type of prejudice or actual concern rather than just coming to a conclusion that the jurors knew who Cohen was, that they had followed the Cohen case, that somehow they would implicate Mr. Cohen or Mr. Jolley to the charge and to Mr. Schafer's situation in this case.

[¶ 24] We do not find any error in the trial court's line of reasoning. That the prosecutor knew of a connection between Schafer and Mr. Cohen seemed unavoidable given the prosecutor's line of work. Schafer suggests on appeal that being mentioned in a newspaper article with other criminals and a miniscule icon on a projection screen amounted to misconduct by the State in this instance. Similar to the district court, we find this argument unconvincing, and based upon our review of the record, we hold that there was no abuse of discretion by the trial court.

[¶ 25] Schafer's next issue of alleged prosecutorial misconduct was a comment made by the prosecutor that potentially and improperly shifted the burden of proof to Schafer. In closing argument, the prosecutor stated, ". . . if there was some explanation for it, they could have put it on." Defense counsel objected to this statement, the court admonished the State, and the proceedings continued. The court also ordered that portion of the prosecutor's argument to be stricken from the record, and the judge stated to the jury, "[T]he Court has instructed you that [Schafer] has no burden to present any evidence in this case. You should disregard any portions of the argument that went to that."

[¶ 26] It is well known that this Court views as an error any suggestion by the prosecution that the defense carries the burden of proof. *Seymore v. State*, 2007 WY 32, ¶ 20, 152 P.3d 401, 410 (Wyo.2007). However, this Court assumes, without there being any indication to the contrary, that the jury followed the trial court's curative instruction. *Burton v. State*, 2002 WY 71, ¶ 18, 46 P.3d 309, 314 (Wyo.2002). The trial court did not abuse its discretion in denying Schafer's motion for a new trial in this instance.

[¶ 27] Finally, Schafer contends that the prosecutor made improper statements which were "designed to appeal to the jury's prejudice or passion." In closing, the prosecutor asked the jury to consider the protection of the community in general, and specifically the officers involved in the arrest. Again, the defense objected to this comment, counsel for both sides approached the bench and a discussion of the nature of the State's comments on closing ensued, out of earshot of the jury. Undeniably, the trial court suggested to the State that it was

very, very close to going over the line in arguing the need for the conviction of the defendant based on the need to support law enforcement.

The court said that while it was not directly stated, it was "clearly implied." The State never returned to that line of argument during closing.

[¶ 28] Schafer compares his case to our decision in *King v. State*, 2002 WY 27, ¶ 19, 40 P.3d 700, 705 (Wyo.2002), where we cited *Gayler v. State*, 957 P.2d 855, 861 (Wyo. 1998). In *Gayler*, we stated:

> Arguments which are designed to appeal to the jury's prejudice or passion are improper. The fear in allowing such appeals is that the accused will be convicted for reasons wholly irrelevant to [his] guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convincing a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

In *Gayler*, the prosecutor blatantly "appealed to the jury to join the government's war [against drugs] by finding Gayler guilty of delivering a controlled substance" in spite of the repeated sustained objections challenging the remarks. 957 P.2d at 860. Here, the prosecutor's comments do not rise to the level of so prejudicing Schafer that the court could not have reasonably concluded as it did when it denied Schafer's motion for new trial. The record reflects that the prosecutor heeded the warnings issued by the trial court, and the trial continued without further incident in this regard.

[¶ 29] The cumulative effect of these three alleged instances of prosecutorial misconduct does not add up to reversible error. Given the record on appeal, and the evidence presented at trial, the trial court did not abuse its discretion when it denied the motion for new trial.

## CONCLUSION

[¶ 30] The Wyoming Legislature did not intend attempted aggravated assault to be a criminal offense; therefore, Schafer's conviction under Count I cannot stand. We reverse Schafer's conviction because the Legislature never intended for the general attempt statute to be applied to the aggravated assault and battery statute. The crime as charged in this Count simply does not exist except by judicial and prosecutorial creation. Furthermore, we conclude that the district court did not abuse its discretion in denying Schafer's motion for a new trial.

[¶ 31] Affirmed in part, reversed in part, and remanded for resentencing.

VOIGT, C.J., filed a separate opinion concurring in part; dissenting in part.

VOIGT, Chief Justice, concurring in part and dissenting in part.

[¶ 32] I concur in that part of the majority opinion that affirms the appellant's various convictions, and I agree that the aggravated assault and battery conviction should be reversed, but I would do the latter on the basis of insufficiency of the evidence, as opposed to doing so as a matter of law. I dissent from the portions of the (1) that conclude that the legislature manifested an intent to declare that "attempt to threaten with a drawn deadly weapon" is not a crime, and (2) that conclude that the legislature manifested an intent that the general attempt statute not apply to any of the subdivisions of the aggravated assault and battery statute.

[¶ 33] Given the existence of the general attempt statute—Wyo. Stat. Ann. § 6-1-301 (LexisNexis 2007)—the words "attempts to cause" in Wyo. Stat. Ann. § 6-2-502(a)(ii) (LexisNexis 2007) are superfluous.[1] I cannot read into that superfluity an intent that attempting to cause serious bodily injury under circumstances manifesting extreme indifference to the value of human life is not a crime, or an intent that attempting to cause bodily injury to a pregnant woman is not a crime. Furthermore, we need not and should not answer those questions in the context of this case, which involves only Wyo. Stat. Ann. § 6-2-502(a)(iii)(LexisNexis 2007).

[¶ 34] Finally, I do not believe that this is one of those cases that involves the "attempt to attempt" conundrum. To threaten with a drawn deadly weapon is not an attempt crime. Moreover, it is not impossible to attempt to threaten someone with a drawn

---

1. *See* Theodore E. Lauer, *Goodbye 3-Card Monte: The Wyoming Criminal Code of 1982*, 19, No. 1, Land & Water L. Rev. 107, 132 (1984).

deadly weapon. Had the appellant, in the instant case, succeeded in fully drawing his handgun, and begun the process of turning toward the officers with it drawn, and later admitted that he intended to yell something akin to "get back, or I'll shoot," but then tripped and fallen over a sagebrush, dropping the weapon in the process, it might be said that he attempted, but failed, to threaten the officers with a drawn deadly weapon.

[¶ 35]   Nevertheless, I agree that the conviction for attempted threatening with a drawn deadly weapon should be reversed in this case because the most that the evidence showed was that the appellant possessed a weapon while he ran from the police.