# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 92

APRIL TERM, A.D. 2015

July 16, 2015

ALLEN JOSEPH COLLINS,

Appellant
(Defendant),

v.                                                      S-14-0285

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
The Honorable Richard L. Lavery, Judge

*Representing Appellant:*
　　　Office of the Public Defender:　Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel.　Argument by Ms. Olson.


*Representing Appellee:*
　　　Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General.　Argument by Ms. Craig.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

NOTICE:　This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Justice.**

[¶1]   A jury found Allen Joseph Collins guilty of one count of second degree sexual abuse of a minor.   He appeals his conviction, claiming the prosecutor committed misconduct in several instances during closing arguments.   We conclude Mr. Collins failed to show he was prejudiced by any prosecutorial misconduct and affirm the conviction.

## ISSUE

[¶2]  The issue for our determination is:

Whether prosecutorial misconduct occurred when in closing and rebuttal argument the prosecutor commented on defense counsel's failure to produce certain evidence and the fact that Mr. Collins did not confess, gave the jury a choice between finding either that the two child witnesses had lied or Mr. Collins was guilty, and referred to one of the child witnesses as a hero.

## FACTS

[¶3]   In the summer of 2013, JP and his friend CT, both nine years old, were playing outside the apartment complex where they lived in Rock Springs, Wyoming.   JP ran up the stairs to his apartment and told his mother that he had seen Mr. Collins, who lived in the same complex, put his hand down the front of CT's shirt.   JP's mother found CT on the stairs outside their apartment and asked her if what JP had said was true.   CT said it was.   JP's mother told CT she needed to tell her mother.   Later, when JP's mother learned that CT had not told her mother, she contacted CT's mother and told her what the children had reported.   CT's mother talked with CT and later JP and both children repeated that Mr. Collins had put his hand down the front of CT's shirt.   CT's mother contacted the Rock Springs police department.   A Wyoming Department of Family Services (DFS) employee conducted a forensic interview with CT.   During the interview, CT reiterated her earlier statement.   Mr. Collins was arrested and charged with one count of second degree sexual abuse of a minor in violation of Wyo. Stat. Ann. § 6-2-315(b) (LexisNexis 2013).

[¶4]  At trial, the State presented the testimony of CT and her mother, JP and his mother, a Ph.D. psychologist with expertise in treating adolescent victims of child abuse, and the police detective who interviewed JP and Mr. Collins.  JP's mother testified about her son reporting to her what he had seen and her subsequent conversations with CT and CT's mother.  JP testified that he saw Mr. Collins put his hand down CT's shirt and Mr. Collins was smiling as he did so.  CT testified Mr. Collins put his hand down her shirt and squeezed her breast.  She also testified Mr. Collins had done this to her between ten

1

and twenty times. Rock Springs police detective Clay Jarvie testified he interviewed JP and JP confirmed he had seen Mr. Collins put his hand down CT's shirt.

[¶5] Detective Jarvie also testified about his interview with Mr. Collins. During the testimony, the State played the tape recording of the interview. Several times during the interview, Mr. Collins denied putting his hand down CT's shirt. He said if it happened it was unintentional or "a freaking accident." Late in the interview, Detective Jarvie told Mr. Collins a story about a time when he personally had a lapse in judgment. After hearing the detective's story, Mr. Collins asked what would happen if he said he had experienced a lapse in judgment.

[¶6] Also during Detective Jarvie's testimony, the State played the tape recording of a telephone call Mr. Collins made to his daughter while he was in jail. During the conversation, his daughter asked what had happened. Mr. Collins responded:

> Well, I'll tell you. I've been doing everything right and everything. These kids were down in front of my place, making a mess, and I told them to get going, get going home, you know, and stuff, and –
> . . . .
> --I kind of touched the one a little bit, she's only nine years old, up by the chest. Didn't mean to. She went home –
> . . . .
> --and tells her mother. Well, they called the cops and got me for that shit.

[¶7] Through the State's witnesses, the defense attempted to show the investigation was incomplete and Detective Jarvie coerced Mr. Collins into making incriminating statements during the interview. The defense also attempted to show the DFS interview of CT was handled improperly and CT was coached into saying Mr. Collins had touched her breast between ten and twenty times. Alternatively, the defense attempted to show that if touching did occur, it was accidental and not for the purpose of causing sexual arousal, gratification or abuse.

[¶8] After the State rested, the defense moved for a judgment of acquittal, which the district court took under advisement. The defense then rested without putting on any evidence. The jury found Mr. Collins guilty of second degree sexual abuse of a minor. Mr. Collins filed a motion for judgment of acquittal and a new trial. The district court denied the motion and sentenced Mr. Collins to serve thirteen to fifteen years in prison. Mr. Collins appealed.

**STANDARD OF REVIEW**

[¶9] Mr. Collins contends prosecutorial misconduct occurred in four instances. First, he claims the prosecutor improperly commented in closing argument that defense counsel had failed to produce the transcript of the DFS interview of CT. Defense counsel objected to the prosecutor's comments at the time and those comments were the basis for the motion for new trial. We, therefore, review the district court's rulings on the objection and motion for an abuse of discretion. *Willoughby v. State*, 2011 WY 92, ¶ 8, 253 P.3d 157, 161 (Wyo. 2011). An abuse of discretion occurs when the district court could not have reasonably concluded as it did. *Id*.

[¶10] Defense counsel did not object when the other three instances of alleged prosecutorial misconduct occurred. We, therefore, review for plain error. *Fennell v. State*, 2015 WY 67, ¶ 23, __ P.3d __ (Wyo. 2015), citing *Anderson v. State*, 2014 WY 74, ¶ 40, 327 P.3d 89, 99 (Wyo. 2014). Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice. *Id*.

## DISCUSSION

### 1. *Comments on evidence the defense did not produce.*

[¶11] During the DFS interview, CT told the forensic interviewer that Mr. Collins put his hand inside her shirt twice—the first time she met him and then again the time JP witnessed it. The interviewer then asked, "Do you think it's happened more than five times?"[1] The interview transcript did not indicate whether CT answered the question. The interviewer continued, "More than ten times? Is that a yes? Okay. How about more than 20 times? No? So maybe somewhere between 10 and 20 times?"

[¶12] On direct examination, the State's expert testified that children generally have difficulty articulating the number of times an event occurred and, rather than saying something happened "x" number of times, they are more likely to say it happened a lot. The expert testified that forensic interviewers are trained not to ask a child how many times something happened. On cross-examination, the expert testified that a forensic examiner would want to stay away from questions like those the interviewer asked CT. Later in the trial, defense counsel used the forensic interview transcript during cross-examination of CT to show that the interviewer asked the sort of questions the State's expert said should not be asked. Defense counsel also used the transcript to show that CT did not say Mr. Collins touched her breast between ten and twenty times; rather, the interviewer asked if that was so and CT merely responded, "Yes." Additionally, he used

---

[1] The actual interview transcript was not introduced as an exhibit at trial and is not part of the record on appeal. Defense counsel read from the transcript on cross-examination of CT to refresh her recollection of the interview. Our description of the interview questions and answers is taken from the trial transcript.

the transcript to show CT's testimony that Mr. Collins put his hand "down" her shirt was inconsistent with a statement she made during the interview that he put his hand "up" her shirt.

[¶13] In his closing argument, defense counsel said:

> [CT] goes to the Family Justice Center where she's interviewed by [DFS], and you heard from the State's own expert that the big question she asked was completely inappropriate. It was suggestive, it could possibly taint, and that information is what the police and the State then use to go after [Mr. Collins].
>
> Not once did [CT] ever say that this happened 10 to 20 times until she took the stand. Not in any police interview, not in … the forensic child interview, never did she say that.
>
> The specific question from [DFS] that I posed to [the State's expert], she says, "Uhm, do you think it happened more than five times?" No answer. "More than ten times?" And she says, "Is that a yes?" She's not even getting any verbal answer. There's some sort of nonverbal body communication. "Okay. How about more than 20 times?" Again, there's no answer. She says, "No?" She says, "Okay. So somewhere between 10 and 20 times." That is entirely the DFS caseworker. Not once does [CT] have to actually say … any of that.
>
> The only thing [CT] says in that interview is two times. Two specific times. The very first time she met [Mr. Collins], and the very last time she met [him]. Nothing in between. She has said more than once. Is two times more than once? Yes. Absolutely.
>
> Does [DFS] get any details in the interview? Very few. … All those details came from – the minimal details we have came from the forensic interview.
>
> . . . .
>
> I think the State will focus on this 10 to 20 times thinking that we will tie that to make this event more believable, that it actually happened. The only person prior to court that ever said that was [the DFS interviewer]… [CT] never said that. Those were numbers given to her, they were put into her head, and she accepted them.
>
> [The State's expert] talked about suggestibility. I think the State would like to tie in 10 to 20 events into a traumatic

bonding so that you can understand why she would keep going back to Mr. Collins.

[¶14] In rebuttal, the prosecutor responded:

> There's been a lot of talk from [defense counsel] about this interview that [DFS] did and repeatedly talked about how poorly [it was done] and how poorly the questions were asked and what the responses were. You don't have that interview. You don't know what was said. [Defense counsel] said that [CT] said the hand went up the shirt. You don't know what was in that interview, and if [defense counsel] thought it was such a terrible interview and it was done poorly, then why didn't he show it to you?

[¶15] Defense counsel objected. The district court cautioned the prosecutor to be careful, and the prosecutor moved on to a different topic. After the verdict, the defense filed a motion for new trial on the basis of the prosecutor's comment that defense counsel could have introduced the interview transcript. The district court denied the motion, ruling that the comment did not impermissibly shift the burden of proof to Mr. Collins and, even if it did, Mr. Collins had failed to show prejudice.

[¶16] On appeal, Mr. Collins asserts the prosecutor's comments concerning his failure to produce the transcript of the forensic interview improperly shifted the burden to the defense to prove his innocence rather than requiring the State to prove his guilt. We have repeatedly said that prosecutors should not suggest a defendant carries any burden of proof. *Schafer v. State*, 2008 WY 149, ¶ 26, 197 P.3d 1247, 1252 (Wyo. 2008). In *Bland v. State*, 803 P.2d 856, 862 (Wyo. 1990), the prosecutor commented in rebuttal that the defendant had the same right as the prosecution to subpoena a witness for trial. The district court overruled defense counsel's objection to the comment. On appeal, this Court concluded the comment was improper and the objection should have been sustained. We said, "The State has the burden of proof, and whether or not the defense subpoenaed a witness is irrelevant."

[¶17] In *Schafer*, ¶ 25, 197 P.3d at 1252, the prosecutor told the jury in closing argument that "if there was some explanation for it, [the defense] could have put it on." Defense counsel objected and the district court admonished the prosecutor and ordered the statement to be stricken from the record. *Id*. The district court also reminded the jury of the instruction given previously that the defendant had no burden to present any evidence and instructed the jury to disregard any portions of the argument suggesting otherwise. *Id*. The defense moved for a new trial based upon the prosecutor's improper statement. The district court denied the motion. On appeal, the defense asserted the district court abused its discretion in denying the new trial motion. While reaffirming the principle

5

that it is error for a prosecutor to suggest the defendant has the burden of proof, we applied the rule that a jury is presumed to follow a court's curative instruction and found no abuse of discretion. *Id*., ¶ 26, 197 P.3d at 1252. Mr. Collins' case is, of course, distinguishable from *Schafer* because, although the district court cautioned the prosecutor about her statement, it did not order the statement to be stricken, remind the jury that Mr. Collins did not have the burden of proof or instruct the jury to disregard the statement.

[¶18] In *Seymore v. State,* 2007 WY 32, ¶ 18, 152 P.3d 401, 407-08 (Wyo. 2007) (abrogated on other grounds by *Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo. 2008), the prosecutor told the jury during voir dire that it was his job to present the evidence tending to show the defendant was guilty and defense counsel's job to present the evidence tending to show his client was not guilty. He continued:

> If the defense has evidence they want you to consider in deciding this case, then they should put it to you. They should bring it to your attention. They should bring it to court and show it to you, or have someone testify about it, that it's not the State's role to present that evidence to you.

*Id*., 152 P.3d at 408. Then, in closing argument, the prosecutor used a demonstrative exhibit to show the evidence he believed should have been brought before the jury by the defense. We held the prosecutor's burden shifting remarks were improper and prejudicial when combined with numerous other prosecutorial transgressions and remanded the case to district court for a new trial. *Id*., ¶ 22, 152 P.3d at 410-411.

[¶19] In the present case, the prosecutor's statements were improper for a couple of reasons. First, the prosecutor's statement that the jury did not have the interview and did not know what was said suggested that defense counsel did not accurately quote the interview. Again, the interview transcript is not part of the appellate record; however, if defense counsel inaccurately quoted it during witness examination or in closing argument, we presume the prosecution would have objected or presented evidence showing the interview questions were not as defense counsel represented. Nothing in the record before us suggests defense counsel inaccurately quoted the interview. In fact, the district court found the prosecutor's statement that the jury did not know what was said to be incorrect, noting that defense counsel read extensively from the transcript. To suggest that defense counsel did not accurately read the transcript, particularly on rebuttal when defense counsel had no opportunity to respond, was improper.

[¶20] We find the prosecutor's statement that if defense counsel thought the interview was so terrible he should have shown it to the jury equally improper. Not only did the statement suggest Mr. Collins had the burden of presenting evidence, it also implied the transcript would have been admitted if only defense counsel had attempted to introduce it. The comment did not inform the jury that the district court could have excluded the

transcript upon finding it lacked foundation, was hearsay or was more prejudicial than probative. Other than the portions read by defense counsel, we do not know what was in the interview. The prosecutor, however, having listed it as an exhibit in her pre-trial memoranda, presumably did know what was in it. With that knowledge, she decided not to introduce it at trial. To the extent her decision was based on a determination that it was not admissible, it was not fair to suggest to the jury, particularly during rebuttal, that the defense could have shown it to the jury.

[¶21] When defense counsel objected to the prosecutor's statement, the district court asked counsel to approach the bench. Outside the jury's hearing, defense counsel made his objection. The prosecutor responded that her comment was a permissible response to defense counsel's statements about the transcript in his closing argument. The district court cautioned the prosecutor that she needed "to be really careful in that regard." The prosecutor said she was finished with her comments about the transcript. Defense counsel did not ask the court to strike the comments or instruct the jury to disregard them. The prosecutor then moved on to a different topic.

[¶22] When the defense filed its motion for new trial on the basis of the prosecutor's comments, the district court denied the motion, ruling the comments were not improper (although they "tread[] perilously close to unsafe ground"); even if they were improper, Mr. Collins had not shown prejudice; any prejudice he might have been able to show was mitigated by the jury instructions; and Mr. Collins essentially waived his right to complain about the comments when he failed to ask for a limiting instruction. Although we disagree with the district court's finding that the comments were not improper, we find the district court's other rulings to be reasonable. The jury heard all of the questions, testimony and argument concerning the interview, including the portions read by defense counsel. The jury was instructed that the law never imposes upon a defendant in a criminal case the burden of producing any evidence; rather, the State always has the burden to prove the defendant's guilt beyond a reasonable doubt as to each element of the offense. The jury was also instructed that the statements of counsel are not evidence. We presume the jury followed the court's instructions. *Haynes v. State*, 2008 WY 75, ¶ 22, 186 P.3d 1204, 1209 (Wyo. 2008).

[¶23] Additionally, whether or not the DFS interview was improperly conducted, the jury heard the testimony of CT that Mr. Collins put his hand inside her shirt twice and knew that testimony was consistent with her interview statements. The jury also heard the testimony of CT's mother, JP and JP's mother. And the jury heard the statements of Mr. Collins in the police interview and the telephone call. Whether or not the jury believed CT was coached into saying it happened ten or twenty times, there was ample evidence from which it could find Mr. Collins put his hand inside CT's shirt once and was guilty of one count of sexual abuse of a minor. The district court did not abuse its discretion in finding Mr. Collins failed to show the prosecutor's comments in rebuttal concerning the interview caused prejudice.

7

## 2. *Comments on the lack of a confession.*

[¶24]   Mr. Collins contends prosecutorial misconduct occurred when the prosecutor commented in her rebuttal closing argument on the fact that he did not confess to the crime charged.   He asserts the comments were an improper comment on his right to remain silent. The Fourteenth Amendment to the United States Constitution and Wyo. Const. art. 1, § 11 provide that no person shall be compelled to testify against himself in any criminal case…" *Tortolito v. State*, 901 P.2d 387, 389 (Wyo. 1991).   A prosecutor's use of a defendant's silence to infer guilt is constitutionally prohibited.   *Id.* at 390.   In analyzing right-to-silence cases, we consider the entire context in which the statements were made.  *Spinner v. State*, 2003 WY 106, ¶ 19, 75 P.3d 1016, 102 (Wyo. 2003).

[¶25]   To place the comment challenged here in context, we first quote from the prosecutor's closing argument.

> And you heard from Detective Jarvie.  Detective Jarvie interviewed [Mr. Collins], and [Mr. Collins] did not admit to doing something intentional.  He didn't flat out deny doing something, but if he did it was unintentional.
> . . . .
> You heard from [Mr. Collins] in the recordings, … and [he] first said, if he did, it was, quote, "unintentional", an accident, … or he also said at one point, what if it was a lapse of judgment?  He never actually admits that he was touching [CT] in the interview, but he says a lot of things that make you wonder why, why isn't he just flat-out denying it?[2]

---

[2]  The prosecutor's statement that Mr. Collins did not deny putting his hand in CT's shirt misrepresented what he said during the interview.  In fact, the following exchanges occurred during the interview:

> Jarvie:  …  Did your hand ever go down [CT's shirt] at all?
> Collins:  No, I don't do shit like that.
> Jarvie:  You don't do shit like that?
> Collins:  Nope.
> …
> Jarvie:  … Because she said it happened between 10 and 20 times.
> Collins:  That's bullshit.
> …
> Jarvie:  But you don't remember if it specifically happened –
> Collins:  No.
> Jarvie:  -- just that it's a possibility?
> Collins:  No.
> Jarvie:  Okay.  How do you want things to go forward from here?
> Collins:  Well, what are you driving at?
> Jarvie:  I'm asking you.

If he's being asked about a lapse of judgment, what would an ordinary person do in that situation? Being asked if they put their hand down a nine-year-old girl's tank top and touched her breasts. Would it not be, that never happened? Would it be, well, what if it was a lapse of judgment?

(Footnote added.)

[¶26] Defense counsel responded in his closing:

The interview with [Mr. Collins] done by Detective Jarvie, why would he not just deny it? Life experience. I'm guessing most of us have been pulled over by a police officer. Do you ever get pulled over by a police officer and sit there and wonder, what did I do, and not be sure why you were pulled over? Does talking to a police officer make you nervous, your heart jump? You get nervous.

[Mr. Collins] was in that police interrogation room for 90 minutes. … He got tired of Detective Jarvie trying to build rapport with him. He just cut to the chase, what's all this crap about? He was tired of it. He … didn't know. He wanted to find out.

Detective Jarvie, he's very good at what he does. … He lies, he minimizes, he distorts the facts, and why does he do those things? To try and get him to say something that deep down he doesn't believe and he won't admit. That's the only chance he has. . . .

You can place yourself there. If you're in a room with Detective Jarvie and he's telling you that he has two witnesses that saw you do something to a – this girl, and you're wracking your brain, and you can't think of it and you can't remember it, are you going to doubt yourself? You're like, man, two witnesses? What did I do? Is it possible? Yeah, it's possible I guess, but I don't remember it. If I did it, I don't remember it. If I did it, it was an accident. It wasn't

---

Collins: What do you mean how do I want things to go forward? I didn't do anything. If I did, like you say, with your witness, it was pure accidental. There was no intentional shit like that.

Mr. Collins does not challenge the prosecutor's misrepresentation on appeal. We presume the jury listened to the evidence and the instruction that the attorneys' arguments were not evidence and disregarded the prosecutor's misstatements.

anything intentional. Is [Mr. Collins] the only one that would react like that?

But Detective Jarvie tries over and over again. He wants the confession. Absolutely, it's manipulation, it's coercion.

. . . .

I think the State likes the sentence in the interview where [Mr. Collins] says, what if it was a lapse in judgment? Watch the tape. Detective Jarvie … talks for a bit. He talks about his own lapse of judgment[], his own mistake, and [Mr. Collins] sits and thinks, would it be better just to admit something that I haven't done? So he asks the question, what if it was a lapse of judgment? What's … the plan? And of course [Detective Jarvie] recognizes that. He's like, I don't want you just to tell me something that's not true. He knows … that's not a confession.

[¶27] Then, in rebuttal, the prosecutor said:

… what [defense counsel] is telling you, in essence, if you do not have a confession, if you do not have someone saying, the Defendant, yes, I put my hand down her shirt, yes, the reason I put my hand down her shirt was for sexual arousal, gratification, or abuse, you cannot convict, and that is not true. You do not have to have a confession.

How many times do you think we have confessions in these cases? How many times do you think people are going to admit to doing something – doing something like that? Because that's not something that sounds good. It's not something that someone is going to want to tell a police officer, it's not something that was told to Detective Jarvie. If you do not have a confession, can you convict in these cases? Yes, you can.

[¶28] The issue Mr. Collins presents on appeal concerns only the prosecutor's comments in her rebuttal argument about the fact that he did not confess.[3] Defense counsel did not

---

[3] Initially, we were more concerned with the prosecutor's opening remarks to her closing argument, in which she stated, "[Mr. Collins] didn't flat-out deny doing something" and "he says a lot of things that make you wonder why, why isn't he just flat-out denying it?" Not only do these remarks misrepresent what occurred in the interview, they struck this Court as implicating Mr. Collins' right to remain silent. However, upon reviewing our precedent, we are satisfied the remarks were not a comment upon Mr. Collin's right to remain silent, but were instead comments on the statements he did make to Detective Jarvie. *See Teniente v. State*, 2007 WY 165, ¶ 24, 169 P.3d 512, 523-524 (Wyo. 2007) (prosecutor's

object to the prosecutor's comments and so we review Mr. Collins' claim for plain error. The challenged comment clearly appears in the record and so we consider whether it violated a clear and unequivocal rule of law. In *Tortolito*, 901 P.2d at 391, a robbery case, the defendant remained silent when police asked whether he took the money. In his opening statement at trial, the prosecutor mentioned the defendant's silence in the face of the police questions. *Id*. During direct examination of the State's witness, the prosecutor asked questions eliciting testimony that in response to police questioning the defendant did not say a word, just stood there and did not respond. *Id*. In his closing argument, the prosecutor characterized the defendant's silence as an admission. *Id*. This Court held the prosecutor's use of the defendant's constitutionally protected right to remain silent in the face of the officers' questions was impermissible comment on that right. *Id*.

[¶29] *Spinner*, 2003 WY 106, 75 P.3d 1016, involved a battery against a household member. When police arrived at the scene, they saw an individual approaching and asked him his name and where he lived. *Id*., ¶ 14, 75 P.3d at 1021. The man did not answer. He was subsequently identified as the perpetrator and arrested. At trial, the prosecutor repeatedly questioned witnesses about the defendant's refusal to answer the police officer's questions and commented on his silence during opening statement and closing argument. *Id*., ¶¶ 14, 15 and 17, 75 P.3d at 1021-1023. This Court held that the prosecutor's use of the defendant's silence in the face of police questioning constituted impermissible comment on his right to remain silent.

[¶30] In *Guy v. State*, 2008 WY 56, ¶ 12, 184 P.3d 687, 693 (Wyo. 2008), an attempted second degree murder case, the defendant asserted the following comments made by the prosecutor in closing argument were improper:

> [Y]ou've already been told by the judge the law says that you can infer the existence of malice and an attempt to kill. Why do we tell you that? Because we're not mind readers. And we rarely have the luxury of bringing you cases where everything was on video tape. After it happened, everybody sat down, including the perpetrators, confessed, told us what they were thinking clearly, enunciated their intent, and elaborated on what they hoped had happened. It hasn't happened to me yet. I have been doing this long enough to

---

statements, when taken in context, did not implicate defendant's right to silence; prosecutor was pointing out what defendant had said in police interview, not his failure to speak); *Carothers v. State*, 2008 WY 58, ¶ 16, 185 P.3d 1, 12 (Wyo. 2008) (prosecutor's comment was not a comment upon the defendant's right to remain silent, but was a comment about the contents of the statement that he gave to police).

11

know that if it was going to happen, I think I would know about it. So we get back to inference.

The defendant argued the prosecutor's comment that malice could be inferred because confessions are rare constituted an impermissible comment on his right to remain silent. *Id.*, ¶ 13, 184 P.3d at 693. This Court rejected the claim, finding instead that the argument was a permissible attempt to explain to the jury that it could infer the defendant's state of mind from the surrounding circumstances. *Id.* We did not find the prosecutor's comment about confessions being rare to be a comment on the defendant's right to silence.

[¶31] In *Tortolito* and *Spinner*, the prosecutors asked questions of witnesses and commented directly in opening statement and closing argument on the defendants' silence. In *Guy*, the prosecutor informed the jury that a confession was not required for a guilty verdict. In the present case, it is clear that both parties commented on the fact that Mr. Collins did not admit to the charge. The prosecutor, while acknowledging that fact, attempted to persuade the jury that it could infer Mr. Collins' guilt from his question about what would happen if he said he had a lapse of judgment. Defense counsel argued Mr. Collins' question was not an admission of anything but a reflection of his nervousness and uncertainty upon being confronted by a police detective who said two witnesses had seen him put his hand inside CT's shirt. Defense counsel also argued the detective's objective was to get Mr. Collins to confess, he coerced Mr. Collins into making an incriminating statement and he ended the interview when he felt he had a statement implicating Mr. Collins. On rebuttal, the prosecutor attempted to diffuse the argument that Mr. Collins' question was not a confession by saying a confession is not necessary to convict and it is rare to have a confession in these kinds of cases.

[¶32] Given the context in which the prosecutor made the challenged statements, we conclude they did not implicate Mr. Collins' right to remain silent. As in *Guy*, the prosecutor's comments merely informed the jury a confession was not required to convict a defendant. Therefore, although the comments clearly appear in the record, we hold they did not violate a clear and unequivocal rule of law and Mr. Collins has not established plain error.

### 3. Statement that the jury had a choice between finding the child witnesses to be liars or finding Mr. Collins guilty.

[¶33] After defense counsel's closing argument, the prosecutor began her rebuttal as follows:

There's a choice that you have to make in this case, and the first thing I want to talk to you about is you have options. You have options of the way to view this.

12

> One of the ways to view this is, [JP] lied when he told his mom, he lied when he told Detective Jarvie, he got on the stand and he lied. CT lied when she told [JP's mother], she lied when she told her mom, she lied when she was in the [DFS] interview, she lied on the stand. Detective Jarvie coerced the Defendant into saying things, and there was a break in the jail recording where there were a couple of words left out that were "they said."

Mr. Collins contends it was plain error for the prosecutor to tell the jury it had the choice between finding him guilty or concluding the child witnesses had lied. The challenged comment clearly appears in the record and the first prong of the plain error test is satisfied. The question is whether the comment violated a clear and unequivocal rule of law.

[¶34] Wyoming law is clear that a prosecutor may not elicit opinions concerning witness credibility or personally vouch for the credibility of a witness. *Fennell*, ¶ 31, ___ P.3d at ___. The statements challenged here did neither. In the context of closing argument, it has long been the rule in Wyoming that it is not reversible error for a prosecutor to argue that a defendant is a liar when the evidence supports a reasonable inference that such is in fact the case. *Jensen v. State*, 2005 WY 85, ¶ 19, 116 P.3d 1088, 1096 (Wyo. 2005); *Beaugureau v. State*, 2002 WY 160, ¶ 14, 56 P.3d 626, 632 (Wyo. 2002); *Barnes v. State*, 642 P.2d 1263, 1266 (Wyo. 1982). Particularly where, as here, the prosecutor makes it clear that the choice is in the hands of the jury, the argument is not improper. *Jensen*, ¶ 19, 116 P.3d at 1095; *Beaugureau*, ¶ 14, 56 P.3d at 632; *Barela*, 787 P.2d at 84. The prosecutor's comments in Mr. Collins' case did not violate a clear and unequivocal rule of law.

### 4. Statement that JP was a "hero."

[¶35] Mr. Collins' final claim of prosecutorial misconduct involves the prosecutor's characterization of JP as a "hero." During her closing argument, the prosecutor said:

> What I want to end with right now is there were two men that were there when this happened. That was the Defendant and that was [JP]. [JP] was nine. The defendant was 62. If there was anyone that was supposed to be protecting a nine-year-old girl, it should have been the Defendant. The Defendant should have known something was wrong. Instead, there was a nine-year-old hero, who was a boy, that had to protect a nine-year-old girl, and he did.

Defense counsel did not object.

13

[¶36] The alleged error clearly appears in the record and the question is whether the comment violated a clear and unequivocal rule of law. Wyoming law is clear that a prosecutor may not personally vouch for the credibility of the State's witnesses. *Fennell*, ¶ 31, ___ P.3d at ___, citing *Dysthe v. State*, 2003 WY 20, ¶ 29, 63 P.3d 875, 886 (Wyo. 2003). In *Fennell*, we held that the prosecutor improperly vouched for the credibility of the State's witnesses when he told the jury "we know" the defendant delivered cocaine, i.e. is guilty, because the detectives "did their job incredibly well" and were "incredibly good at their job." *Id.*, ¶ 31, ___ P.3d at ___. We contrasted those remarks with a comment we held was not improper in *Burton v. State*, 2002 WY 71, ¶ 32, 46 P.3d 309, 317 (Wyo. 2002). In *Burton*, ¶ 33, 46 P.3d at 317, the prosecutor said the witnesses were "blatantly honest" in admitting to the jury that they were doing drugs. We said:

> The prosecutor's comment in *Burton* referenced testimony from witnesses who had admitted to the jury that they were doing drugs. In that context, the prosecutor was not confirming as a result of his own experience that they were blatantly honest; he was pointing out that the witnesses had been forthright, something the jury itself had experienced when they heard the witnesses' testimony. In the present case, the prosecutor's comments involved his own opinion or experience of the incredible job the agents did, something the jury had not experienced and one of the very questions the jury had to resolve for itself.

*Fennell*, ¶ 43, ___ P.3d at ___. We concluded the prosecutor in *Fennell* had asserted "his belief based on his personal opinion or experience that the agents did an incredible job, thus creating the risk that the jurors would view him as an authority whose knowledge and opinions carried greater weight than their own." *Id*.

[¶37] In *Teniente*, ¶ 32, 169 P.3d at 525 (Wyo. 2007), the prosecutor made the following comments to the jury in closing argument:

> [W]e have one eyewitness, one eyewitness that stepped up to the plate February 18th, and said, 'I was there. This is what happened.' A statement as, you know, he has stayed consistent with, a statement he testified to in Eddie's trial.
>
> As you notice, when [defense counsel] went to question him, he couldn't impeach him on any of his prior inconsistent statements because there weren't any. He has stayed consistent, ladies and gentlemen, even in the face of threats from his family, ostracism by his family.

14

> He saw what happened, and he decided to step forward and tell the truth, even though the first time, it's against his very own brother, and now the second time, against his cousin. Courage.

On appeal, the defendant asserted the prosecutor improperly vouched for the witness's credibility when he made these comments. We concluded that rather than vouching, the prosecutor had drawn reasonable inferences from the evidence presented at trial. *Id.*, ¶ 33, 169 P.3d at 525.

[¶38] The prosecutor's comments in the present case are more like those in *Teniente* and *Burton* than those in *Fennell*. As in *Teniente* and *Burton*, the prosecutor in Mr. Collins' case made a reasonable inference about a witness who appeared and testified at trial. The inference was not based on her own personal experience but on the fact that the witness had reported what he had seen and then had come before the jury to report it again. Unlike the comments in *Fennell*, the prosecutor's characterization of JP as a hero did not create the perception that the prosecutor had special knowledge of or experience with JP beyond what the jury had from hearing the testimony. Mr. Collins has failed to show that the prosecutor's comment violated a clear and unequivocal rule of law.

[¶39] We affirm Mr. Collins' conviction.