DAVIS, Chief Justice.
[¶1] Cortney Alan Kite was convicted of aggravated assault and other misdemeanor offenses after he led law enforcement on a high-speed chase on I-25, crossed the median, and drove against oncoming traffic. Mr. Kite appeals his aggravated assault conviction, claiming the district court erred in instructing the jury and that the evidence was insufficient to support his conviction. We affirm.
*258 ISSUES
[¶2] Mr. Kite presents two issues on appeal, which he states as follows:
I. The district court erred by instructing the jury that [Mr. Kite] could be convicted of attempting to cause serious bodily injury under any three distinct and separate mental states: recklessness, general intent, or specific intent.
II. The district court erred by not granting [Mr. Kite's] motions for judgment of acquittal on the basis that [the State] never proved that [Mr. Kite] attempted to injure other motorists.
FACTS
[¶3] Viewing the evidence in the light most favorable to the State and resolving any evidentiary conflicts in its favor, see Dockter v. State , 2017 WY 63, ¶ 3, 396 P.3d 405, 406 (Wyo. 2017), the pertinent facts established at trial are as follows. On October 24, 2016, at 4:51 p.m., Wyoming Highway Patrol Trooper Gabriel Walz was on patrol, driving north on I-25 near Glenrock, Wyoming. He observed a silver Pontiac Grand Prix with Iowa plates (which turned out to be driven by Mr. Kite) pass a semi-truck without signaling and drift over the fog line close to the median. He followed the vehicle for a short distance and then initiated a traffic stop.
[¶4] Trooper Walz approached the vehicle on the passenger side, introduced himself, and requested Mr. Kite's driver's license, registration, and proof of insurance. Mr. Kite responded, "Nope," peeled out, and headed north at a high rate of speed. Trooper Walz returned to his vehicle, radioed dispatch concerning the situation, and then pursued Mr. Kite, driving at speeds of up to 140 m.p.h. to catch up to him.
[¶5] About a mile and a half from where Trooper Walz had stopped him, Mr. Kite crossed the median, entered the southbound lanes of I-25, and proceeded to drive north against the southbound traffic. He initially entered the southbound passing lane, but then moved into the driving lane, forcing a white passenger car and three semi-trucks to the shoulder. Mr. Kite then moved from the driving lane to the passing lane, forcing a black passenger car from the passing lane into the median. Approximately fifty-four seconds after entering the southbound lane, Mr. Kite again crossed the median and continued northbound in the northbound lane.
[¶6] The chase continued at high rates of speed northbound on I-25, and then onto a secondary road known as Deer Creek Road. At about milepost 2 on Deer Creek Road, Mr. Kite left the road and drove into a field. He stopped when his vehicle hit a center pivot rut and was disabled. The two passengers, Mr. Kite's wife and a hitchhiker they had picked up, stayed with the vehicle. Mr. Kite fled on foot and was eventually intercepted by two Converse County sheriff's deputies, who arrested him.
[¶7] The State charged Mr. Kite with one count of aggravated assault and battery on two alternative bases: Wyo. Stat. Ann. § 6-2-502(a)(i) ("attempts to cause serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life") and Wyo. Stat. Ann. § 6-2-502(a)(ii) ("[a]ttempts to cause ... bodily injury to another with a deadly weapon"). The State also charged Mr. Kite with one count of misdemeanor driving under the influence, one count of misdemeanor possession of marijuana, one count of misdemeanor fleeing or attempting to elude police officers, and one count of misdemeanor reckless endangerment.
[¶8] Before trial, Mr. Kite moved to strike the words "knowingly, or recklessly" and the phrase "under circumstances manifesting extreme indifference to the value of human life" from the aggravated assault and battery charge, arguing that such mental states were not consistent with the specific intent required to support a charge of attempt to cause serious bodily injury. The district court denied the motion, explaining:
The State does not have to prove the Defendant had the specific intent to cause serious bodily injury in order to prove their case under Count I. According to the statute, the State must show the Defendant attempted to cause serious bodily injury to another either (1) intentionally, (2)
*259 knowingly, or (3) recklessly under circumstances manifesting extreme indifference to the value of human life.
[¶9] The State dismissed the possession of marijuana charge before trial, and a two-day jury trial was held on the remaining four charges on May 9-10, 2017. After the State rested, Mr. Kite moved for a directed verdict on the aggravated assault and battery and DUI counts. The district court denied the motion, and all four counts were submitted to the jury.
[¶10] The jury found Mr. Kite guilty of aggravated assault and battery, fleeing or attempting to elude police officers, and reckless endangerment, and acquitted him on the DUI charge. With respect to the aggravated assault and battery charge, the jury completed the relevant portions of the verdict form as follows:
COUNT 1:
*260 1. We the jury, duly empanelled and sworn to try the above entitled cause, do find that as to the crime of Aggravated Assault and Battery, the Defendant, Cortney Alan Kite, is
_____ Not Guilty X Guilty
If you answered Not Guilty to Question 1, proceed to Question 2.
If you answered Guilty, answer the following subparts to Question.
a) Was such aggravated assault an intentional attempt to cause serious bodily injury?
X Yes _____ No
b) Was such aggravated assault a knowing attempt to cause serious bodily injury?
X Yes _____ No
c) Was such aggravated assault an attempt to cause serious bodily injury that was done recklessly under circumstances showing extreme indifference to the value of human life?
X Yes _____ No
d) Was such aggravated assault an attempt to cause bodily injury to another with a deadly weapon?
X Yes _____ No
[¶11] On May 19, 2017, Mr. Kite filed a motion for judgment of acquittal on the aggravated assault and battery count, arguing that the evidence was insufficient to establish that he intended to cause serious bodily injury when he drove against traffic on I-25. On May 31, 2017, the district court denied the motion. It again ruled that specific intent to cause injury was not required by the governing statute, but it also found that even if such intent were required, the jury found that intent and the evidence supported the finding.
[¶12] On September 28, 2017, the district court sentenced Mr. Kite to a prison term of *261 six to eight years on the aggravated assault and battery charge, to be served concurrently with the misdemeanor sentences. Mr. Kite timely appealed the judgment and sentence to this Court.
DISCUSSION
[¶13] Mr. Kite claims the district court erred in instructing the jury and in denying his motion for judgment of acquittal. Before turning to those claims, however, we must first address a discrepancy between the district court's judgment and the jury's verdict, which we found during our review. We will then address Mr. Kite's claims of error as he presented them.
A. Remand for Correction of Judgment and Sentence
[¶14] The jury returned a verdict against Mr. Kite finding him guilty of aggravated assault in violation of Wyo. Stat. Ann. §§ 6-2-502(a)(i) and (a)(ii), and the district court entered a post-trial order declaring Mr. Kite guilty under both subsections. The court deviated from that verdict, however, both in its oral ruling on sentencing and in its written judgment and sentence.[1] During sentencing, the court orally cited to only subsection (a)(i) as the basis for Mr. Kite's conviction, and in its written judgment and sentence, it cited to only subsection (a)(ii). Although Mr. Kite did not claim error related to these discrepancies, we conclude they must be corrected so the record is clear as to the basis for the court's judgment and sentence, as required by W.R.Cr.P. 32.
[¶15] Generally, a sentencing court's unambiguous oral pronouncements will prevail over a contrary provision in a written order. McEwan v. State , 2018 WY 65, ¶ 8 n.2, 419 P.3d 881, 883 n.2 (Wyo. 2018) (quoting Britton v. State , 2009 WY 91, ¶ 24, 211 P.3d 514, 519 (Wyo. 2009) ). Rule 32 requires, however, that a judgment of conviction after trial contain "[a]n adjudication as to each offense including the name and statute number for each convicted offense and whether such offense is a felony or misdemeanor." W.R.Cr.P. 32(b)(2)(C). Neither of the sentencing court's rulings, oral or written, fully complied with this requirement because neither cited to both statutory provisions under which Mr. Kite was convicted.
[¶16] We addressed a similar circumstance in Kearns v. State , 2002 WY 97, ¶ 26, 48 P.3d 1090, 1098 (Wyo. 2002), in which the judge misspoke during sentencing and called the defendant's conviction one for attempted aggravated robbery rather than aggravated robbery. The court's error carried over to its written order, and on that basis, the defendant claimed he could not be sentenced as a habitual criminal because attempted aggravated robbery was not a violent felony. Id. We concluded that because 1) the information charged the defendant with aggravated robbery, 2) the jury was instructed on and convicted defendant of aggravated robbery, and 3) the court's mislabeling was not a deliberate result of judicial reasoning and determination, the error was merely clerical and subject to correction under W.R.Cr.P. 36. Kearns, ¶¶ 26-29, 48 P.3d at 1098-99. We thus rejected the defendant's argument and remanded for entry of a judgment corrected to reflect the offense on which he was convicted. Id . ¶¶ 29-30, 48 P.3d at 1099.
[¶17] Mr. Kite was charged with aggravated assault under both subsections (a)(i) and (ii), the jury was instructed and convicted him under both subsections, the district court's order entering the verdict cited both subsections, and neither the sentencing court's oral or written ruling suggests it deliberately referenced only a single subsection. We thus find the discrepancies between the judgment and verdict to be clerical errors and, although we affirm Mr. Kite's conviction for reasons discussed below, we remand for entry of a judgment corrected to reflect that he was convicted of aggravated assault under both subsections (a)(i) and (ii).
B. Jury Instructions
[¶18] The district court ruled that the crime of attempted battery under *262 Wyo. Stat. Ann. § 6-2-502(a)(i) is a general intent crime and instructed the jury as follows concerning the crime's elements:
INSTRUCTION NO. 19
The elements for the State's first theory of the crime of Aggravated Assault and Battery as charged in Count 1 of this case are:
1. On or about October 24, 2016,
2. In Converse County, Wyoming
3. The Defendant, Cortney Alan Kite,
4. Intentionally OR knowingly OR recklessly under circumstances which showed an extreme indifference to the value of human life,
5. attempted to cause serious bodily injury to another person.
If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.
[¶19] Mr. Kite contends the district court erred both in ruling that aggravated assault under subsection (a)(i) is a general intent crime, and in instructing the jury that an attempted battery could be committed knowingly or recklessly as well as intentionally. Although we agree that attempted battery under subsection (a)(i) is a specific intent crime, we find the jury instructions taken as a whole gave the jury a correct basis on which to convict Mr. Kite. We therefore find the instructions adequate under the circumstances of this case.
[¶20] We review the district court's interpretation of subsection (a)(i) de novo. See Farnsworth v. State , 2017 WY 137, ¶ 7, 405 P.3d 1067, 1069 (Wyo. 2017).
In any question of statutory interpretation, our primary objective is to give effect to the legislature's intent. L & L Enters. v. Arellano (In re Arellano) , 2015 WY 21, ¶ 13, 344 P.3d 249, 252 (Wyo. 2015). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.' " Adekale , [v. State , 2015 WY 30,] ¶ 12, 344 P.3d [761] at 765 [ (Wyo. 2015) ] (quoting Rodriguez v. Casey , 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo.2002) ). In light of this objective, we have said:
We therefore construe each statutory provision in pari materia , giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.
Nicodemus v. Lampert , 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) (citing Estate of Dahlke ex rel. Jubie v. Dahlke , 2014 WY 29, ¶¶ 36-37, 319 P.3d 116, 125-26 (Wyo. 2014) ).
Cheyenne Newspapers, Inc. v. Bd. of Trustees of Laramie Cty. Sch. Dist. No. 1 , 2016 WY 113, ¶ 10, 384 P.3d 679, 682 (Wyo. 2016) (quoting Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer , 2015 WY 127, ¶ 22, 357 P.3d 1118, 1126 (Wyo. 2015) ).
[¶21] As to our review of the elements instruction itself, Mr. Kite objected below, and we therefore review the instruction for an abuse of discretion. Tingey v. State , 2017 WY 5, ¶ 40, 387 P.3d 1170, 1181 (Wyo. 2017). District courts have "wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." Hurley v. State , 2017 WY 95, ¶ 8, 401 P.3d 827, 830 (Wyo. 2017) (quoting Dennis v. State , 2013 WY 67, ¶ 36, 302 P.3d 890, 897 (Wyo. 2013) ). An erroneous instruction on an essential element *263 of the charged offense "is not a fundamental error requiring automatic reversal, but rather a trial-type error subject to harmless error analysis." Bean v. State , 2016 WY 48, ¶ 61 n.6, 373 P.3d 372, 391 n.6 (Wyo. 2016) (quoting Jones v. State , 2011 WY 114, ¶ 14, 256 P.3d 527, 532 (Wyo. 2011) ).
[¶22] Subsection (a)(i) defines the crime of attempted battery as follows:
(a) A person is guilty of aggravated assault and battery if he:
(i) Causes or attempts to cause serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]
Wyo. Stat. Ann. § 6-2-502(a)(i) (LexisNexis 2017) (emphasis added).
[¶23] Generally, an attempted crime is a specific intent crime. Noel v. State , 2014 WY 30, ¶ 35, 319 P.3d 134, 146 (Wyo. 2014) (quoting Bloomfield v. State , 2010 WY 97, ¶ 13, 234 P.3d 366, 371-73 (Wyo. 2010) ); see also 2 Wayne R. LaFave, Subst. Crim. L. § 16.3(a) (3d ed. 2017 update) (footnote omitted) ("An attempt to commit any crime requires a specific intent to commit that crime[.]"). That is because an attempt requires an intent to do some further act or create additional consequence, which is how we distinguish between general and specific intent crimes.
When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence the fact that the defendant intended to do the proscribed act makes that crime a general criminal intent offense. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.
Sam v. State , 2017 WY 98, ¶ 69, 401 P.3d 834, 857 (Wyo. 2017) (quoting Cox v. State , 829 P.2d 1183, 1185 (Wyo. 1992) ).
[¶24] We have in fact, in the time since Mr. Kite's conviction, considered the mental state required for the crime of attempted battery. Sam , ¶ 72, 401 P.3d at 857. In Sam , which differed only in that it was subsection (a)(ii) that we were interpreting rather than subsection (a)(i), we held that attempted battery with a deadly weapon is a specific intent crime.
Section 6-2-502(a)(ii) provides that a "person is guilty of aggravated assault and battery if he [a]ttempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" The attempt portion of this statute requires a person to act with the intent to commit a further act, the act of causing bodily injury to another with a deadly weapon. Thus, it is a specific intent crime.
Sam , ¶ 72, 401 P.3d at 857.
[¶25] We can discern no relevant difference between subsections (a)(i) and (a)(ii). Both require a person to act with the intent to commit a further act or achieve an additional consequence-(a)(ii), the act of causing bodily injury, and (a)(i), the act of causing serious bodily injury. Both are specific intent crimes.
[¶26] The State concedes that Sam is controlling, and that the attempted battery defined by subsection (a)(i) is a specific intent crime, but it contends that the legislature's use of the terms "intentionally, knowingly, or recklessly" reflects its intention that specific intent may be established with evidence of any of the three states of mind. In support of this argument, it points to our decision in Cecil v. State , 2015 WY 158, ¶ 14, 364 P.3d 1086, 1091 (Wyo. 2015), where we recognized the legislature's amendment of subsection (a)(i) to make attempted battery a crime and commented that "[i]n accordance with the elements of the crime as set forth by the legislature, the jury was instructed that the crime of aggravated assault and battery requires an intentional, knowing, or reckless attempt to cause serious bodily injury." Id.
[¶27] The State extends Cecil beyond its intended precedent. Our decision in Cecil was limited. We recognized that the legislature had added the crime of attempted battery to subsection (a)(i) and held that because it did so, the general attempt statute, Wyo. Stat. Ann. § 6-1-301, did not apply. Cecil , ¶ 12, 364 P.3d at 1090. We were not presented with and did not address the question of how the *264 term "recklessly" should be interpreted in relation to the crime of attempt. Now that we are presented with the question, we conclude that the use of the use of that term in subsection (a)(i) did not change the showing required to prove the crime of attempted battery.
[¶28] The term "recklessly," as used in subsection (a)(i), is defined by statute.
A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the harm he is accused of causing will occur, and the harm results. The risk shall be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
Wyo. Stat. Ann. § 6-1-104(a)(ix) (LexisNexis 2017).
[¶29] The term has no place as an element of an attempted crime. A conscious disregard of a risk, and even an extreme indifference to the value of human life, differs from an intent to cause a particular result. It simply makes no sense to say that an individual can specifically intend a further act or consequence through conscious disregard or extreme indifference. Because we presume that the legislature acts in a thoughtful and rational manner with full knowledge of existing law and intends new statutory provisions to be read in harmony with existing law, we presume the legislature did not intend to use the terms "recklessly" and "extreme indifference" to modify the phrase "attempts to cause."[2]
[¶30] This conclusion is consistent with the history of the amendment to subsection (a)(i), which followed quickly on the heels of this Court's decision in Schafer v. State , 2008 WY 149, 197 P.3d 1247 (Wyo. 2008). In Schafer , we held that because subsection (a)(ii) of the aggravated assault and battery statute included an attempted crime and that language was omitted from the other subsections, the legislature intended to preclude such a charge under those other subsections. Schafer , ¶ 15, 197 P.3d at 1250-51. The legislature responded in its next session.
Following our decision in Schafer , the legislature changed the language of Wyo. Stat. Ann. § 6-2-502(a)(i) from "causes serious bodily injury" to "causes or attempts to cause serious bodily injury." As a result of this amendment, the legislature has specifically made an attempt to cause serious bodily injury a crime under Wyo. Stat. Ann. § 6-2-502(a)(i).
Cecil , ¶ 12, 364 P.3d at 1090 (emphasis in original); see also 2009 Wyo. Sess. Laws ch. 195, § 1.
[¶31] This Court's holding in Schafer precluded a charge of attempted battery under subsection (a)(i), and the legislature responded directly by adding attempt language. We find it clear that the legislature intended no more than to create the crime of attempted battery, which is a specific intent crime. Nothing in the circumstances surrounding the amendment to subsection (a)(i) suggests that the legislature intended to act more broadly and create a general intent crime-something more akin to an aggravated reckless endangerment.
[¶32] This case ultimately illustrates the difference between general and specific intent crimes. Mr. Kite concedes that he acted recklessly with extreme indifference to the value of human life when he led Trooper Walz on a highspeed chase. If he had in fact caused serious bodily injury, we would not ask whether he intended to cause that injury.
*265 Aggravated battery is a general intent crime, and the evidence would therefore be required to show only that the defendant acted recklessly with extreme indifference to the value of human life and injury resulted.
[¶33] That is not what happened in this case, however, and the evidence therefore had to show more than that Mr. Kite acted recklessly. The State was required to prove that Mr. Kite acted with a specific intent to cause serious bodily injury. Fortunately, although the elements instruction for subsection (a)(i) did instruct the jury that it could find Mr. Kite guilty of attempted aggravated assault and battery if it found he acted recklessly or knowingly, the instruction also offered the correct option for Mr. Kite's state of mind, that he acted intentionally. Additionally, the verdict form specifically asked the jury whether Mr. Kite's actions were "an intentional attempt to cause serious bodily injury," to which the jury responded in the affirmative. We have said:
The purpose of jury instructions is to "provide the jury with a foundational legal understanding to enable a reasoned application of the facts to the law." Walker [v. State , 2013 WY 58,] ¶ 31, 302 P.3d [182,] 191 [ (Wyo. 2013) (Walker II ).] In order to support a reliable verdict, it is crucial that the trial court correctly state the law and adequately cover the relevant issues. Ultimately, the test of adequate jury instructions is "whether they leave no doubt as to the circumstances under which the crime can be found to have been committed." Walker II , ¶ 31, 302 P.3d at 191.
Blevins v. State , 2017 WY 43, ¶ 26, 393 P.3d 1249, 1255 (Wyo. 2017) (quoting Dean v. State , 2014 WY 158, ¶ 33, 339 P.3d 509, 517 (Wyo. 2014) ).
[¶34] Reading the elements instruction and the verdict form together, we are satisfied the instructions gave the jury a correct and legally sufficient basis on which to convict Mr. Kite of attempted battery under subsection (a)(i) and were therefore adequate. We turn then to the question of whether the evidence was sufficient to support the jury's finding that Mr. Kite intentionally attempted to cause serious bodily injury.
C. Sufficiency of the Evidence
[¶35] Mr. Kite contends that the evidence was insufficient to support his conviction for aggravated assault and battery and the district court therefore erred in denying his motion for a judgment of acquittal. Our review is as follows:
In reviewing the denial of a motion for judgment of acquittal, we examine and accept as true the evidence of the prosecution together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict therewith.
A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is [sufficient] evidence to sustain a conviction of the crime, the motion should not be granted. This standard applies whether the supporting evidence is direct or circumstantial.
Butcher v. State , 2005 WY 146, ¶ 11, 123 P.3d 543, 548 (Wyo. 2005).
Bruce v. State , 2015 WY 46, ¶ 52, 346 P.3d 909, 926 (Wyo. 2015). In other words, "[o]ur duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." Wilkerson v. State , 2014 WY 136, ¶ 28, 336 P.3d 1188, 1200 (Wyo. 2014) (citations omitted).
Pearson v. State , 2017 WY 19, ¶ 10, 389 P.3d 794, 796-97 (Wyo. 2017).
[¶36] Mr. Kite does not contend that the evidence was insufficient to show that he intentionally, knowingly, and recklessly crossed the I-25 median and drove north against the southbound traffic. Nor does he contest that a vehicle can be a deadly weapon. He claims only that the evidence was insufficient to show that he intended to cause bodily harm to another person when he drove against the southbound traffic. We disagree.
[¶37] We have explained the showing that must be made to prove specific intent to cause bodily injury.
*266 [A]lthough the law presumes an individual to generally intend the natural consequences of his actions, it will not presume that he specifically intended any particular consequence. That is, a mere showing that certain conduct occurred which produced a particular result is legally sufficient to establish the actor's general intent. ... [T]he bare fact of assaultive behavior will not give rise to a presumption that an assailant had the specific intent to cause any particular harm. ... [S]pecific intent may be properly proved by reasonable inferences from the character of such acts and their surrounding circumstances. In particular, the specifics of a defendant's conduct and other circumstantial evidence may permit the jury to infer that he acted with the specific intent to cause bodily injury.
Sam , ¶ 72, 401 P.3d at 857-58 (quoting Leavitt v. State , 2011 WY 11, ¶ 10, 245 P.3d 831, 833 (Wyo. 2011) ) (emphasis in original).
[¶38] The testimony of Trooper Walz and his dash cam video recording showed that Mr. Kite crossed the I-25 median and entered the southbound passing lane. He drove north in the southbound passing lane for about five to six seconds and then moved into the driving lane where oncoming headlights were visible. Trooper Walz described the lane change:
I could see headlights coming from a white passenger car in the driving lane. And then Mr. Kite's vehicle-He didn't drift over into what would be the driving lane, the same lane of the oncoming traffic; it was an intentional movement ....
[¶39] Mr. Kite was accelerating as he entered the driving lane, and his lane change forced the white passenger car and three semi-trucks to the shoulder. After those vehicles cleared the driving lane, he moved to the passing lane. He again accelerated after he changed lanes, and his action forced a black passenger car from the passing lane into the median.
[¶40] The jury also heard testimony from Converse County Investigator Eric Koss, who interviewed Mr. Kite the day after his arrest. During Mr. Koss's testimony, portions of his recorded interview were played for the jury, and Mr. Koss testified concerning the portions the jury heard. He testified:
Q. So from the statements then that he's making to you, what's your understanding then of why he went into the other lane?
A. Basically, that if he would put somebody else's life in danger that the Highway Patrol would have to stop chasing you.
[¶41] Mr. Kite argued to the jury, and he argues on appeal, that he clearly did not intend to cause bodily harm because if he intended to cause bodily injury, he could have and would have hit the other vehicles. He asserts his sole purpose in driving against the traffic was to cause Trooper Walz to stop his pursuit.
[¶42] These are certainly inferences that could be made from the evidence the jury heard, but they are the inferences favorable to Mr. Kite. Our standard of review requires that we look instead to the inferences favorable to the State. When we consider the evidence from that perspective, we must conclude the jury reasonably reached its verdict.
[¶43] The evidence showed that while driving north in the southbound lane, Mr. Kite twice changed lanes, first from the passing lane to the driving lane and then back. Both lane changes put him on a head-on course toward oncoming, high-speed traffic. We believe a reasonable jury could conclude that Mr. Kite intentionally aimed his vehicle at the oncoming cars for the sole purpose of causing an accident. See Sam , ¶ 73, 401 P.3d at 858 (quoting Walter v. State , 811 P.2d 716, 721 (Wyo. 1991) ) ("One who knowingly drives an automobile directly at another person can reasonably be found to have intended to do bodily injury to that person."). We are not swayed from this inference by Mr. Kite's insistence that had he intended to cause bodily injury, he would have struck the other vehicles. Striking the vehicles himself was not the only way to cause bodily injury. Bodily injury would have resulted had one or more of the oncoming vehicles lost control while trying to avoid a collision with Mr. Kite. A reasonable jury could infer that that was in fact Mr. Kite's plan-to cause an accident to create a break in Trooper Walz's pursuit.
*267 [¶44] Sufficient evidence and the reasonable inferences drawn from that evidence support the jury's verdict. The district court therefore did not err in denying Mr. Kite's motion for a judgment of acquittal.
CONCLUSION
[¶45] Under the circumstances of this case, we are satisfied that the elements instruction gave the jury a correct and legally sufficient basis on which to convict Mr. Kite of attempted battery under subsection (a)(i) and were therefore adequate. Additionally, the jury's verdict finding Mr. Kite guilty of aggravated assault and battery was supported by sufficient evidence. We therefore affirm but remand for correction of clerical errors in the judgment and sentence, consistent with this opinion.

Judge John C. Brooks presided over Mr. Kite's trial and through entry of the order on the jury's verdict and denial of Mr. Kite's motion for judgment of acquittal. Following his retirement, Judge F. Scott Peasley presided over sentencing and entry of the judgment.

While we find the term "recklessly" incompatible with the crime of attempt under the aggravated assault and battery statute, we do not agree with Mr. Kite that the term's statutory definition logically makes an attempted battery categorically impossible. Whether it will be can depend on the purpose and wording of the statute involved. Despite the wording of its definition, we have held that "recklessly" does not, as Mr. Kite argues, require an actual bodily injury when the crime charged is reckless endangerment.
[W]e believe the definition of "recklessly" does not require "death or serious bodily injury." Rather, the term "harm" in the definition of "recklessly" refers to engaging "in conduct which places another person in danger of death or serious bodily injury." It logically follows that the harm which must result is actually placing another person in danger of death or serious bodily injury.
Orona-Rangal v. State , 2002 WY 134, ¶ 18, 53 P.3d 1080, 1086 (Wyo. 2002). Our decision in this case is limited to the statute it involves.