# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 62

APRIL TERM, A.D. 2024

June 12, 2024

CAMILO JESUS ALARCON-BUSTOS,

Appellant
(Defendant),

v.                                                                  S-23-0253

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]     A jury convicted Camilo Jesus Alarcon-Bustos of felony property destruction and misdemeanor reckless driving and possessing an open container of an alcoholic beverage. Mr. Alarcon-Bustos challenges the property destruction conviction, arguing the prosecutor committed prosecutorial misconduct during closing argument by misstating the law and by referring to facts not in evidence.  We affirm.

## *ISSUE*

[¶2]     Mr. Alarcon-Bustos raises one issue which we rephrase as:

> Did the prosecutor commit prosecutorial misconduct during closing argument by misstating the law or by referring to facts not in evidence?

## *FACTS*

[¶3]     The road through Dixon, Wyoming, curves past a residential area and park.  The speed limit on that road is 30 miles per hour.  On October 3, 2022, at around 10:00 p.m., Mr. Alarcon-Bustos, towing his work trailer with his truck, drove through Dixon.  He lost control of the truck on the curve, hit the curb, and crashed into a retaining wall and a chain link fence surrounding the park.  The trailer detached from the truck and landed in the park. The damage to the park exceeded $18,000.  Mr. Alarcon-Bustos was charged with felony property destruction and misdemeanor reckless driving and possessing an open container of alcohol.

[¶4]     At trial, Shirley Stocks and Tyler Webb testified that, while they did not see the crash, they heard it.  After she heard the crash, Ms. Stocks went to the scene, called 911, and began taking photographs with her cell phone.  She testified that two men got out of the truck, took off down a nearby alley, and then returned to the scene.  She described the men as "staggering pretty bad . . . [like] [w]hen somebody has been drinking" and stated that she "didn't really feel that they were hurt bad."  After the men returned, she observed them speaking with Mr. Webb and then leaving again.

[¶5]     Mr. Webb testified that after he arrived at the accident, he saw two men get out of the truck, arguing.  He thought they were drunk because "they just hit a wall" and "[t]here was a bunch of beer cans all over the ground."  Mr. Webb testified Mr. Alarcon-Bustos told him that somebody had stolen the truck and, after Mr. Webb offered to call 911, both men "took off [on foot] down the alley" and did not return.  After the men took off, Mr. Webb called the sheriff's department.  Mr. Webb testified he might have told the sheriff's department that the men were "drunker than 300 Indians" and stated he jokingly asked one of the officers if he could take the chainsaw that was in the truck.

1

[¶6]   Carbon County Sheriff's Deputy Casey Lehr arrived and conducted a crash scene investigation.  He observed an opened beer can that had spilled on the floorboard of the truck, many unopened beer cans in the back seat of the truck, a half-empty box of wine on the passenger floorboard, and two or three empty beer cans on the ground.  After measuring the skid marks on the road, Deputy Lehr calculated that the truck was traveling at 55 miles per hour as it approached the curve.  Deputy Lehr concluded that Mr. Alarcon-Bustos caused the crash by "traveling at a high rate of speed [so that he] was unable to navigate the turn," and "[w]hen the vehicle struck the curb, the truck then spun around causing the trailer to detach from the vehicle.  The truck went off [and] got stuck on the retaining wall.  The trailer went past the truck and ended up in the park."

[¶7]   Mr. Alarcon-Bustos took the stand in his own defense.  He testified he was familiar with the road through Dixon and had experience pulling a trailer with his truck.  He admitted he accidentally crashed his truck into the park, but he explained that the accident was caused by "a problem with the wheel."  He testified he noticed the truck "kind of shake," so he braked, and the truck "went off to the fence."  He originally thought one of his truck tires "had gone out or had gone flat, but it was actually the rim that had broken."  Mr. Alarcon-Bustos also testified he had not been drinking and that all the beer cans in his truck were closed at the time of the crash.

[¶8]   In the State's rebuttal, Deputy Lehr explained that his crash investigation revealed no evidence that the tire failed prior to the crash and that "[i]f the wheel failed the way [Mr. Alarcon-Bustos described], there would be gouge marks on the asphalt on the highway" and there were no gouge marks, only skid marks, on the highway.  Deputy Lehr agreed the "hubs of the spokes on the [tire] rim were broken" but, based upon the skid marks, he opined that after the tire hit the curb, the hub spokes broke and "detached from the vehicle."

[¶9]   The jury found Mr. Alarcon-Bustos guilty of felony property destruction, misdemeanor reckless driving, and misdemeanor possession of an open container of alcohol.  The district court sentenced Mr. Alarcon-Bustos to two to four years of incarceration, suspended in favor of two years of probation.  Mr. Alarcon-Bustos appeals.

[¶10]  Additional facts will be introduced in the discussion below.

## STANDARD OF REVIEW

[¶11]  Mr. Alarcon-Bustos did not lodge a prosecutorial misconduct objection with the district court. Accordingly, our review is for plain error. *Freer v. State*, 2023 WY 80, ¶ 24, 533 P.3d 897, 904 (Wyo. 2023) (citation omitted).  To establish plain error, Mr. Alarcon-Bustos "must show (1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) he was denied a substantial right resulting in material prejudice." *Id.* (citation omitted).

This Court has defined prosecutorial misconduct as "[a] prosecutor's improper or illegal act (or failure to act), esp[ecially] involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." [*King v. State*, 2023 WY 36,] ¶ 16, 527 P.3d [1229, 1238 (Wyo. 2023)] (citation omitted). Prosecutorial misconduct is more than evidentiary error. *Id.* (quoting *McGinn v. State*, 2015 WY 140, ¶ 50, 361 P.3d 295, 306 (Wyo. 2015) (Fox, J., concurring)). Such claims are intended "to address gross prosecutorial improprieties that have deprived a criminal defendant of his or her right to a fair trial." *Meece v. State*, 2023 WY 60, ¶ 17, 530 P.3d 597, 600 (Wyo. 2023) (quoting *King*, ¶ 16, 527 P.3d at 1238).

*Freer*, ¶ 25, 533 P.3d at 904–05.

## *DISCUSSION*

[¶12]  The record clearly reflects the alleged prosecutorial misconduct; the first prong of plain error is satisfied.  We turn to the remaining prongs of the plain error analysis.

## A.    Alleged Misstatements of the Law

[¶13]  Wyo. Stat. Ann. § 6-3-201(a) provides: "A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent."  Wyo. Stat. Ann. § 6-3-201(a) (LexisNexis 2023).  Property destruction and defacement is a felony "if the cost of restoring injured property or the value of the property if destroyed is one thousand dollars ($1,000.00) or more."  Wyo. Stat. Ann. § 6-3-201(b)(iii).

[¶14] Mr. Alarcon-Bustos alleges the prosecutor committed misconduct in closing argument by telling the jury the State did not need to prove that Mr. Alarcon-Bustos intentionally ran his truck into the park, and stating Mr. Alarcon-Bustos' actions in knowingly choosing to drive his truck, speeding, and driving while impaired were sufficient to show the requisite mental state to establish property destruction.  In closing, the prosecutor said:

> [Mr. Alarcon-Bustos] was hauling a trailer behind his truck, a warning.  [Mr. Alarcon-Bustos was] drinking, [and it is] common knowledge [that]: consumption of alcohol can impair your ability to drive.  [There was a] warning on each of those beer cans.  These warnings – speed limits, curves –

3

showed the defendant's knowledge to causing property damage.

. . .

> **There's no requirement that the State prove that he intentionally ran his truck into the park. His driving conduct – speeding, driving intoxicated or impaired, going through that curve . . . shows his knowledge in this case.**

(Emphasis added.) In rebuttal closing, the prosecutor continued:

> You can knowingly put your phone in your back pocket, and it can fall out. You knew it was there, didn't intend for it to fall . . . . It's based on your knowledge of putting it [there].
>
> Driving at a high rate of speed, traveling with a trailer, driving, as the witnesses described, under the influence of alcohol. That is knowledge, awareness. Disregarding the safety of others by choosing to drive that fast.

And later, the prosecutor expounded:

> There is no element in our property destruction elements that says the State has to prove this was done intentionally. "Knowingly" is what the element is, having awareness. No element that says the State has to prove he purposefully lost control of his vehicle, purposefully hit the curb.
>
> The act of him driving recklessly, the act of him driving at a high rate of speed as proven by the evidence, the act of him driving impaired as described by the witnesses, proves his knowledge. As previously stated, he chose to drive his vehicle. No one forced him to do it in this matter.

[¶15] Mr. Alarcon-Bustos argues these statements violated a clear and unequivocal rule of law because they misstated the law on the "knowingly" element of felony property destruction. *See Anderson v. State*, 2014 WY 74, ¶ 39, 327 P.3d 89, 99 (Wyo. 2014) ("Even unintentional misstatements of the law are misconduct by a prosecutor." (citation omitted)). Mr. Alarcon-Bustos postulates that *Morris v. State*, 2009 WY 88, 210 P.3d 1101 (Wyo. 2009), sets forth the law on the mental state necessary to prove felony property destruction.

4

[¶16]  In *Morris*, this Court discussed the "knowingly" requirement of Wyo. Stat. Ann. § 6-3-201(a).  The defendant in *Morris* was "goofing around [and] slid across the top" of a car, causing the hood to cave in.  *Morris*, ¶ 12, 210 P.3d at 1105.  He was charged with felony property destruction.  During closing, the prosecutor defined "knowingly":

> it is a person who knew what he was about to do and with that knowledge, proceeded to do it.  So we're not talking about somebody who's unconscious or somebody who didn't realize what his actions would have resulted in.  Somebody who intentionally acted in a manner that he did with knowledge of what he was doing.  So he didn't have to intend to cause damage.  He didn't have [to] intend to be malicious.  He didn't have to intend to be mean.  He had to know that he was stepping on a car and that is it.  He knew what he was doing.

*Id.* ¶ 19, 210 P.3d at 1106.  Mr. Morris appealed, arguing the prosecutor misstated the law.  On plain error review, we agreed and held that § 6-3-201 "required the State to prove that Mr. Morris knowingly, that is, with awareness, deliberateness or intention," damaged the property.  *Id.* ¶ 22, 210 P.3d at 1107.  We explained:

> Evidence that Mr. Morris inadvertently defaced the vehicle would not have been sufficient to support a conviction under the statute.  We agree with Mr. Morris that the prosecutor misstated the law when she told the jury that all the State had to show was that he jumped on the car, and that it did not have to show that he intended to damage it.  Giving the words their plain meaning, the statute required proof that Mr. Morris deliberately damaged the vehicle or intended that result.  Mr. Morris has demonstrated the second requirement for plain error.

*Id.*

[¶17]  We considered the "knowingly" element of property destruction more recently in *Childers v. State*, 2021 WY 93, 493 P.3d 168 (Wyo. 2021).  The facts in *Childers* are protracted.  Relevant to this case, Mr. Childers led police on a high-speed chase while under the influence of methamphetamine, and struck another car, a tree, and a planter.  *Childers*, ¶¶ 5–14, 493 P.3d at 169–70.  Among other counts, he was charged with property destruction.  *Id.* ¶ 1, 493 P.3d at 169.  At trial, Mr. Childers moved for judgment of acquittal on the property destruction count, arguing that the evidence was insufficient to show he knowingly defaced or injured property.  *Id.* ¶ 17, 493 P.3d at 170–71.  The district court denied the motion and the jury convicted him on all counts.  *Id.* ¶ 18, 493 P.3d at 171.  On appeal, Mr. Childers argued that he "acted inadvertently or involuntarily because he was

attempting to elude law enforcement and swerved onto a sidewalk to avoid hitting [a] vehicle when he unintentionally caused the damage." *Id.* ¶ 22, 493 P.3d at 171. He contended the evidence was not sufficient to establish he acted "knowingly." *Id.* ¶ 22, 493 P.3d at 171–72.

[¶18]   Relying on *Hopkins v. State*, this Court held that "for general intent crimes the only requirement necessary to prove that an accused acted 'knowingly' is that the proscribed conduct which caused the result was done voluntarily." *Childers*, ¶ 24, 493 P.3d at 172 (citing *Hopkins v. State*, 2019 WY 77, ¶ 11, 445 P.3d 582, 586 (Wyo. 2019)). Because Mr. Childers was engaged in the "voluntary and intentional conduct of eluding police in a high-speed chase and driving while under the influence of methamphetamine" when he caused the property damage, the evidence was sufficient to support a finding that he knowingly destroyed property. *Childers*, ¶ 25, 493 P.3d at 172.

[¶19]   We acknowledge the inconsistency between *Morris* and *Childers* and conclude, that because property destruction is a general intent crime, *Childers* correctly applies the "knowingly" requirement of Wyo. Stat. Ann. § 6-3-201(a). We have explained:

> General intent crimes are different from specific intent crimes. When a crime's definition "consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence the fact that the defendant intended to do the proscribed act makes that crime a general criminal intent offense." *Kite v. State*, 2018 WY 94, ¶ 23, 424 P.3d 255, 263 (Wyo. 2018) (citation omitted). In contrast, when a statute "refers to [the] defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." *Id.* (citation omitted). It is more difficult for the State to prove specific intent than general intent. *Simmons v. State*, 674 P.2d 1294, 1297 (Wyo. 1984), *superseded by statute on other grounds as stated in Cox v. State*, 829 P.2d 1183 (Wyo. 1992).

*Person v. State*, 2023 WY 26, ¶ 67, 526 P.3d 61, 77–78 (Wyo. 2023).

[¶20]   Felony property destruction is a general intent crime because it does not require an intent to do a further act or achieve a future consequence. *See Childers*, ¶¶ 24–25, 493 P.3d at 172; *compare, e.g.*, Wyo. Stat. Ann. § 6-2-506(b) ("a person commits the crime of stalking [(a specific intent crime)] if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person"), *with* Wyo. Stat. Ann. § 6-3-201(a) ("A person is guilty of property destruction and defacement [(a general intent crime)] if he knowingly defaces, injures or destroys property of another without the owner's consent."). "[F]or general intent crimes the only requirement necessary to prove

that an accused acted 'knowingly' is that the proscribed conduct which caused the result was done voluntarily." *Childers*, ¶ 24, 493 P.3d at 172 (citing *Hopkins*, ¶ 11, 445 P.3d at 586).[1]

> "An act is voluntary if the actor intended to do it (as opposed to an event occurring accidentally or involuntarily)." *Barrera v. State*, 2017 WY 123, ¶ 31, 403 P.3d 1025, 1031 (Wyo. 2017). "If done voluntarily, 'the inference thereupon arises that the defendant intended that which resulted.'" *Harris* [*v. State*, 2006 WY 76,] ¶ 26, 137 P.3d [124, 131 (Wyo. 2006)] (quoting *Slaughter v. State*, 629 P.2d 481, 483–84 (Wyo. 1981)); *see also Tillett v. State*, 637 P.2d 261, 264 (Wyo. 1981) (stating defendants are "considered by law to have intended the natural consequences of [their] act[s]"); *Streitmatter v. State*, 981 P.2d 921, 927 (Wyo. 1999) (citation omitted) ("The crime of aggravated assault [under Wyo. Stat. Ann. § 6-2-502(a)(iii)] is a general intent crime, and its commission requires only that intent which the jury may infer from the commission of the proscribed act.").

*Hopkins*, ¶ 9, 445 P.3d at 586.

[¶21]   The prosecutor did not misstate the law when she said the State did not need to prove that Mr. Alarcon-Bustos intentionally ran his truck into the park. Nor did she misstate the law when explaining that the facts—Mr. Alarcon-Bustos knowingly chose to drive his truck, was speeding, and was driving while impaired—were sufficient to prove the "knowingly" element of property destruction. To establish that Mr. Alarcon-Bustos acted "knowingly," it was sufficient to show that the proscribed conduct—driving at a high rate of speed and driving while impaired—was voluntary. *Childers*, ¶ 24, 493 P.3d at 172. To the extent *Morris* can be read to conflict with this conclusion, it is overruled. Because the prosecutor did not violate a clear and unequivocal rule of law, Mr. Alarcon-Bustos failed to establish the second prong of plain error review. *See Meece v. State*, 2023 WY 60, ¶ 25, 530 P.3d 597, 602 (Wyo. 2023), *cert denied*, — U.S. —, 144 S.Ct. 371, 217 L.Ed.2d 199 (2023).

## B.    Reference to Facts Not in Evidence

[¶22]   Mr. Alarcon-Bustos contends the prosecutor committed misconduct during closing argument when referencing a conversation with a member of the jury panel during voir

---

[1] We recognize that Wyo. Stat. Ann. § 6-3-201 has the potential to result in troublesome outcomes depending on the circumstances surrounding its application. The elements of a crime are governed by statute, and if changes are needed, it is the province of the legislature, not the courts, to make them.

dire. During voir dire, the prosecutor questioned members of the jury panel about their experience with people who had been drinking. The prosecutor singled out one prospective juror, and asked him how a person who has had only a few drinks differs from someone who is "really drunk."

> [State]: . . . How do those differ? How do they look different?
>
> [Prospective Juror]: I don't really – you can kind of tell when someone has a little more than they are able to. And then they are not able to control themselves, you know, like – a lot of people would sit down and have a drink with dinner and be perfectly fine.
>
> [State]: And so even if someone has just had a drink with dinner, are there certain things you look for so you can tell that they have had a drink with dinner?
>
> [Prospective Juror]: Yeah, sometimes. It matters person to person, I guess.
>
> [State]: Sure. What kind of things have you seen?
>
> [Prospective Juror]: I don't know.
>
> [State]: Maybe they talk a little bit more?
>
> [Prospective Juror]: A lot more social, incoherent, I guess, lose mobile functions.
>
> [State]: Okay. Anyone have a different experience with someone who has only had a few drinks or even had a lot of drinks?

After getting no verbal response, the prosecutor moved on. The State used its first peremptory challenge to exclude the prospective juror, and he was not empaneled on the jury.

[¶23] During closing, the prosecutor referred to the conversation with the prospective juror:

> During *voir dire*, or jury selection, the majority of you raised your hand when asked if you have come in contact with someone who has been drinking alcohol.

8

> Different spectrum; having a few drinks versus getting drunk. [Prospective Juror] in selection stated that people acted differently, they stumble. Even if they have only had a few, you know if they have had a few.
>
> Mr. Webb and Ms. Stocks knew what they saw: someone who had been drinking. Mr. Webb described seeing those beer cans in the vehicle. . . .

Mr. Alarcon-Bustos argues that the prosecutor violated an unequivocal rule of law when she referenced the voir dire conversation with the prospective juror because that conversation was not in evidence.

[¶24] Statements made by prospective jurors during voir dire are not evidence. *See, e.g.*, Wyoming Criminal Pattern Jury Instruction 1.03 (statements, questions, and arguments of counsel are not evidence); *Bocanegra v. State*, 519 S.W.3d 190, 232 n.46 (Tex. App. 2017) ("statements made by jurors during voir dire were not evidence"). Further, a clear and unequivocal rule of law prohibits counsel from arguing matters not in evidence during closing argument. *Bogard v. State*, 2019 WY 96, ¶ 64, 449 P.3d 315, 330 (Wyo. 2019) (closing argument is "limited to the evidence presented in the courtroom" (quoting *Youngberg v. State*, 2012 WY 119, ¶ 7, 284 P.3d 820, 823 (Wyo. 2012))); *Doherty v. State*, 2006 WY 39, ¶ 20, 131 P.3d 963, 969–70 (Wyo. 2006) ("prosecutors must limit their closing arguments to commenting on the evidence" (citing *Condra v. State*, 2004 WY 131, ¶ 22, 100 P.3d 386, 392 (Wyo. 2004))). The prosecutor violated a clear and unequivocal rule of law when referring to the prospective juror's voir dire comment in closing argument.

[¶25] We turn to the third prong of plain error and examine whether Mr. Alarcon-Bustos was denied a substantial right resulting in material prejudice. *Freer*, ¶ 24, 533 P.3d at 904. We find Mr. Alarcon-Bustos has not established that he was materially prejudiced by the prosecutor's reference to the prospective juror's statement.

[¶26] It is well-established that attorneys may argue matters of common knowledge. *McLaughlin v. State*, 780 P.2d 964, 968–69 (Wyo. 1989) ("It is permissible to refer to well-known facts from the public press or argue matters of common knowledge." (citing 75 Am. Jur. 2d *Trial* § 252 (1974))).

> In seeking out members of the community for jury service, the courts do not limit the search to inhabitants of monasteries or nunneries or others who live a cloistered life. An important attribute of a jury is the collective common knowledge and wisdom it possesses from the varied experiences of its members during their many years on this earth. Matters within the common knowledge of mankind are a proper subject for

9

comment during the summation. *See State v. Jones*, 197 Ariz. 290, 306, 4 P.3d 345 (2000); *People v. Strozzi*, 712 P.2d 1100, 1105 (Colo. App. 1985); *Hall v. State*, 259 Ga. 412, 414, 383 S.E.2d 128 (1989); *McLaughlin v. State*, 780 P.2d 964, 968 (Wyo. 1989).

*State v. Henderson*, 96 P.3d 680, 686 (Kan. Ct. App. 2004).

[¶27] While the prosecutor's reference to the prospective juror's responses in voir dire was an impermissible reference to matters not in evidence, in context, the prosecutor was describing a matter of common knowledge—people stagger or stumble when they are drunk. This improper reference was inconsequential—it was an isolated statement that added nothing of substance and did not mislead the jury.

> In *Mazurek v. State*, 10 P.3d [531, 539 (Wyo. 2000)], this court listed several non-exhaustive factors to be utilized to evaluate whether there was prejudicial plain error at the trial level as a result of prosecutorial misconduct. Those factors . . . include 1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice the accused; 2) whether the remarks were isolated or extensive; 3) the strength of competent proof to establish guilt, absent the remarks; 4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; 5) the presence or absence of a limiting instruction; 6) whether the error was invited by defense counsel; 7) whether the failure to object could have been the result of tactical decisions; and 8) whether, in light of all the evidence, the error was harmless.

*Trujillo v. State*, 2002 WY 51, ¶ 15, 44 P.3d 22, 28 (Wyo. 2002). Weighing the *Mazurek* factors against the record as a whole and considering the prospective juror's statements described matters of common knowledge, we conclude the prosecutor's improper reference did not materially prejudice Mr. Alarcon-Bustos.

## *CONCLUSION*

[¶28] Mr. Alarcon-Bustos did not establish the prosecutor violated a clear and unequivocal rule of law in arguing that Mr. Alarcon-Bustos did not have to intend the consequences of his prohibited conduct to establish the element of "knowingly" under the property destruction statute. While the prosecutor's reference to a potential juror's statement during voir dire violated a clear and unequivocal rule of law, it did not prejudice Mr. Alarcon-Bustos. Mr. Alarcon-Bustos has not established plain error. Affirmed.